By the Court.—Monell, J.
By the terms of the contract between the parties, the money which the plaintiff agreed to advance, and which he did advance, was to be repaid to him, if he was not “ satisfied” with the “practicability” of the engine, as a motive power.
It is not necessary to go the length of holding that this was so absolute a right, that the plaintiff could arbitrarily, and without reason, determine to be dissatisfied, and claim a return of his advances, without establishing by any evidence the impracticability of the machine.
The contract and the evidence show, that the defendant desired to avail himself of the pecuniary aid of the plaintiff, to develop the invention; and it was the design, as well as the agreement of the parties, that the plaintiff should be protected from any loss, which , might be caused by a failure of the experiment. Hence, in broad terms, the plaintiff was authorized to determine for himself, on the practical working of the engine, and its sufficiency as a motive power ; and upon a literal construction of the agreement he might claim, that he was to be the sole judge, and that his conclusion should be final, without furnishing any proof whatever, of any impracticability in the machine or its purpose.
*207 But as has been said, it is not necessary to go so far. The referee has found, that several engines were constructed, none of which were such as was contemplated by the contract; that the plaintiff never expressed satisfaction with the machine as a motive power ; and that the defendant, himself, was dissatisfied with them, as they were constructed, each being set aside for another, and the last one condemned and abandoned by him. This finding, being supported by the evidence, established a sufficient ground for a rescission of the contract, and furnished a sufficient a reason for declaring the impracticability of the machine. Thereupon the plaintiff, prima facie, was entitled to repayment of his advances.
A point was made by the appellant, that the plaintiff had failed to show a performance on his part, of the contract, namely, that he had not advanced all the money he agreed to ; and had also refused to retire.'
The first ground was not taken at the trial, and it is now too late to be urged here. Besides, under a contract of this nature, the plaintiff had a right to stop the advances whenever he became satisfied with the insufficiency of the experimentand, therefor, he is not affected by the principle governing the performance of mutual amounts. The second ground arises, it is supposed, from .the relation of the parties under the contract with the Kingslands and Delamater ; but I can: not find anything in the contract of June 20 and 25, which authorizes the objection. There was no period fixed for the completion of the machines, or of the experiments with them ; nor was there any covenant for the plaintiff’s retirement. When he became dissatissatisfied, he could terminate the contract, and, probably, was bound to restore to the defendant, all that he had parted with to the plaintff. Had the latter, therefore, become possessed of any tangible interest in the invention, he was bound to restore it to the defendant, *208 as a condition precedent to a rescission of the contract. All this he offered to do before suit was brought. But, if I understand the objection, it is, that the new relation of the parties, under the transfer to the Kings-lands and Belamater, furnished proof of an inability, and, therefore, it was equivalent to a refusal to retire from the enterprise, and of an election to continue under the new arrangement. I do not find any evidence, outside of the contracts themselves, which goes to sustain the objection, and I shall have occasion to construe those contracts upon another branch of the discussion.
The principal objection to the decision below is,, that the plaintiff waived his rights under the contracts, and is estopped from demanding a return of his advances by entering into what the defendant claims was a partnership and joint ownership with the Kingslands and Be Lamater.
The transfer to the Kingslands was of one-quarter, and to Be Lamater of one-eighth. These several transferees advanced, and agreed to advance, money for the expense -of experiments, and for advancing the invention and constructing the engines. In the transfer to Be Lamater, he undertook to have an engine constructed and tested, under the supervision of Ericsson, the electrician, for the purpose of developing, improving and putting the invention into practical operation. And to this arrangement the plaintiff was a party, and consented to it.
These several parties then became joint owners of the invention, and, inter se, were, probably, to some extent, partners in the enterprise. The different agreements seem to have contemplated a continuance of the joint ownership, and an ultimate joint engagement in the sale of engines under the invention.
1 But these subsequent arrangements did not merge or destroy the prior agreements between the plaintiff *209 and defendant. There was certainly no expressed design of doing so, nor can any such design fairly be inferred from the transaction. The object of all the parties was to develop the invention, and they united in furnishing the necessary pecuniary aid for that purpose. In each instance, the profit or loss was dependent upon the success of failure of the experiment; and whatever separate or individual rights the parties, or any one of them, had; were not designed to be, nor were they, subordinated to, or in any manner affected by, the collected or aggregate rights of all.
The plaintiff, whose assistance had been exhausted, was not unwilling to allow the additional aid of others ; and in uniting in the transfer, he did nothing more than to consent to further attempts to develop the invention for the mutual benefit of all concerned. I do not perceive that the plaintiff acquired, under these transfers, any new or different interests, or other interests than such as depended upon the performance of the conditions contained in the first and second agreements with the defendant. And there is no where to be found an intention on the part of the plaintiff to merge those interests in the subsequent contracts.
Notwithstanding, therefore, that there was a qualified partnership, or what might have resulted in a partnership inter se, yet there was nothing in these subsequent transactions which was in fact, or in legal effect, an abandonment of the covenants and conditions in the original agreements.
Nor was there anything in these later transactions which can operate as an estoppel upon the plaintiff. He surrendered nothing. ' He held out no false lure to the defendant; nor did he acquire any interest that was not dependent upon the fulfillment of the defendant’s obligations. And it is not enough that a mere possible benefit, to which he consented, but which was *210 thus dependent, can estop him from asserting his prior claim.
The parties agreed that De Lamater should construct the test machine, and so far, it may be said, he was substituted in the place of the defendant, and, possibly, to that extent, the conditions in the defendant’s agreements, depended upon the machine which De Lamater might construct. But if the latter, in constructing a machine, failed to satisfy the terms of the condition, by showing the practicability of the invention as a motive power, the parties were restored to all primary rights.
So the referee has found that the machine constracted by De Lamater was not satisfactory, and was condemned and abandoned by the defendant.
Upon such condemnation and abandonment, the parties were referred to their rights under the former contracts.
The second cause of action was sustained by the proof. The finding, therefore, that those expenses were paid or incurred at the instance of the defendant, was justified.
I have noticed all the exceptions which were urged on the argument or stated in the printed points, and do not find any error in the judgment.
It should be affirmed.